## BOGLE v. WASHINGTON NAT. INS. CO.
### No. 3215.

Court of Civil Appeals of Texas.
Beaumont.

Dec. 14, 1938.

Rehearing Denied Dec. 29, 1938.

Collins & Collins and John S. Redditt, all of Lufkin, for appellant.

K. W. Denman, of Lufkin, for appellee.

O'QUINN, Justice.

Robert W. Bogle sued the Washington National Insurance Company to recover on an accident insurance policy. He alleged that the policy provided he would be paid $40 per month for bodily injuries accidentally suffered by him which prevented him from wholly and continuously performing the duties pertaining to his business or occupation during the life of the policy. He alleged that on November 13, 1931, he accidentally received bodily injuries while working in the course of his employment for the Southern Pacific Railroad Company as a carpenter and bridge builder, which totally and permanently disabled him from performing work of any kind; that at such time the insurance policy was in full force and effect by reason of which he was entitled to receive $40 per month from November 13,

1931, to date of judgment, with interest and hospital fees.

Appellee, Washington National Insurance Company, answered by general demurrer, certain special exceptions, general denial, and specially that appellant was not entitled to recover because: (a) that on December 8, 1931, for and in consideration of the sum of $80 paid by appellee to appellant he executed and delivered to appellee a release in full of all his demand by reason of his injury and claim on appellee completely and fully discharging it from any other or further liability to him; and (b) appellant did not furnish appellee with due proof of loss within the time and in the manner required by the policy.

Appellant in reply to appellee's answer of release and discharge alleged that if he executed any such release that it was not done voluntarily nor willingly for in that by reason of his then physical and mental condition caused by his injuries and the treatment therefor, he was not mentally competent to execute such release and did not and could not understand the meaning of same, nor the consequences that would result from its execution. Against this appellee plead laches in appellant resting for more than five years before asking that the release be set aside.

The cause was tried to a jury, but upon the conclusion of the evidence on motion of appellee the court instructed the jury to return a verdict for it which was done and judgment accordingly rendered. Motion for a new trial was overruled, and we have the case on appeal.

The undisputed facts show that appellant, on November 13, 1931, was an employee of the Southern Pacific Railroad Company, working as a carpenter and bridge builder. He was covered by an accident insurance policy maintained by appellee. This policy provided that if appellant received an accidental injury while in the course of his employment which wholly and continuously disabled him from performing the duties pertaining to his business or occupation, appellee would pay him the sum of $40 each month he was so disabled. On November 13, 1931, while working in the course of his employment, appellant was accidentally injured, rendering him totally disabled to do any of the services for which he was employed. He was taken to a hospital at Jacksonville, Texas, and treated for his injury—various bruises and a fractured

lombar vertebrae. The company furnished blank reports to be made out by injured employes on which to report to the company any injury. This was made out by appellant. It was in the form of printed questions with blank spaces left for answers. These were fully and accurately filled in and answered by appellant. His attending doctor also made required report. There is no question either as to the accuracy or the completeness of these reports. Question No. 1 was: "When do you expect to be able to work"? He answered: "About Jan. 15", this would have been about 60 days after the injury. Question 14 was: "If paid at once without requiring further proofs, what number of days indemnity are you willing to accept in full payment of claim for this injury"? To this he answered: "60 days". This report of injury was made out on November 27, 1931. On said date the attending physician at Jacksonville hospital sent in his report in which he stated that appellant would be able to resume work in "about 3 mos". December 8, 1931, appellee, insurance company, mailed appellant check for $80 covering 60 days indemnity, which he received and signed receipt on back stating it was payment in full of all claims by reason of the accident he had received. He indorsed the check and his wife cashed it and they used the money.

As stated, supra, this suit was to recover the $40 monthly indemnity provided for in the policy. In answer to the suit appellee plead payment and estoppel against the right of appellant to recover. To this plea, appellant replied that if he executed the release plead that he was not mentally capable to execute same for in that at the time he was mentally not capable of understanding the nature and consequences of his act. This plea was filed November 16, 1936. To this appellee plead laches.

We think the judgment must be affirmed. The accident occurred on November 13, 1931. On November 27, 1931, appellant in answer to questions on blank accident report furnished him, stated that he would accept $80, if paid him at once, in full of his indemnity claim. Appellee on December 8, 1931, only eleven days after the report was made to it, accepted appellant's offer and mailed him check for $80 which was received by appellant, indorsed and cashed and the money used. While appellant was testifying, on cross examination in rebuttal to his evidence

that he did not comprehend that he was releasing his claim for monthly indemnity when he accepted the check and signed the release, he testified:

"Q. That is the reason you put sixty days in there? A. I said I put sixty days in there, probably be able to return to my work within sixty days.

"Q. And you sent that in, and when did this check come? A. It was some time later.

"Q. You got the check some few days later—you got the check and you endorsed the check and cashed it or had it cashed, and you used the money as you said buying groceries? A. Yes, sir.

"Q. And you never did write in after you got that check, did you? A. No, sir.

"Q. Did you have anybody write them? A. No, sir.

"Q. Did you ask anybody to write them? A. No, sir.

"Q. You just went along about your business, you were there and stayed there and didn't say anything else about the insurance policy? A. I was expecting another check within about thirty days after that.

"Q. You didn't get it? A. No, sir.

"Q. Did you write when you didn't get it? A. No, sir.

"Q. Did you have anybody write them? A. No, sir.

"Q. And the next thirty days you didn't get a check? A. No, sir.

"Q. Did you write them then? A. No, sir.

"Q. Did you have anybody write them? A. No, sir.

"Q. The next thirty days the check didn't come? A. No, sir.

"Q. You never did write them? A. No, sir.

"Q. You never did ask anybody to write them, did you? A. No, sir.

"Q. And if anybody wrote them about it, they did that without your knowledge or your consent? A. Yes, sir.

"Q. And you have not written them to this day? A. No, sir."

On re-direct examination, he testified that if anybody wrote the insurance company about his claim, it was without his knowledge or consent; that he did not authorize anybody to write to the company relative to his claim. That he was in-

jured on November 13, 1931; sent in the report of the accident November 27, 1931, and received the check for $80 on December 8, 1931. That the letter enclosing the check was received by his wife, and he having been removed by the railroad company from the hospital at Jacksonville to its hospital at Houston, his wife carried the check to him there, but did not bring him the letter accompanying the check; that he never saw the letter nor did his wife read same to him, and that he did not ask anything about the letter. That he thought the check was for one month's payment, and that if he had realized that the check was in full settlement of his claim, and released appellee from further payments, he would not have accepted it or signed the release on the back of the check. That after he left the Southern Pacific Hospital, he continued to be under the treatment of the doctor for "something like a year and a half from the time I was injured". That the reason he did not continue the medical treatment after he left the care of the hospital physician was that the treatment did not seem to give him any relief—that "I. just continued with bathing my back with rubbing alcohol, chloroform liniment and other liniments that I could obtain cheaper than going for a doctor". That they said there was nothing else that could be done. He further testified that he had settlement with the railroad company of his claim against it, and received $4,000. That he could not return to the work he had been doing because he was not able to do the work; that he tried to farm and to do carpenter work, but was not able to work at either because he suffered severe pain all the time.

We think appellant's own testimony shows that he was not entitled to recover. It shows, we think, that he fully understood the nature and amount of settlement he had made with appellee of his claim. He made the offer, it was accepted and the payment promptly made. He made absolutely no claim of any nature to the insurance company for further monthly payments, neither did he authorize anybody to make further claim for him. This continued for five years and still no further claim was made. This clearly shows that he knew of and understood the settlement he had made with the insurance company and that he had released it from further payments. His testimony shows him to be a man of average intelligence,

and it cannot be believed that he would accept $80 as two months indemnity payment, and expect other monthly payments to follow, and when they did not come month after month for that long time, he would not even inquire the reason for not receiving the payments—never to the day of filing suit did he ever write the company, or have anybody to write for him relative to same.

The record abundantly supports the judgment—in fact we do not think the court could have permitted any other judgment to stand—and so the judgment should be affirmed, and it is so ordered.

Affirmed.